[No. B210077. Second Dist., Div. One. July 13, 2009.]

In re R.M. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
J.M., Defendant and Appellant.

**COUNSEL**

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Appellant.

Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**ROTHSCHILD, J.**—The juvenile court found 13-year-old R.M. and his 10-year-old sister, S.M., to be dependent children of the court under Welfare and Institutions Code section 300, subdivision (b),[1] ordered them removed from their mother's custody and placed them in separate foster homes. We conclude that the evidence is insufficient to support the petition as to mother.[2]

## PROCEEDINGS BELOW

A 2004 family law order awarded custody of R.M. and his sister, S.M., to mother and visitation rights to their father. In June 2008 the Los Angeles County Department of Family and Children Services (DCFS) filed a petition in juvenile court only under section 300, subdivision (b) alleging that R.M. and S.M. had suffered and were at substantial risk of suffering serious physical harm as a result of their parents' inability to adequately supervise or protect them. The record does not disclose how the family came to the attention of the DCFS. Mother and father waived their right to a trial on the allegations and the court sustained the petition on the basis of the reports submitted by the DCFS.

The court found that "periodic episodes of inadequate supervision of the children" caused by mother and father's "divergent approaches to parenting" resulted in S.M.'s exposure to "inappropriate sexual conduct" by her brother, R.M. The court further found that mother's "physical and emotional problems [and depression] . . . periodically render her unable to provide adequate care and supervision for the children" thereby placing the children "at risk of physical and emotional harm and damage."

## DISCUSSION

Mother contends the evidence was insufficient to sustain the petition as to her.

To be sufficient to sustain a juvenile dependency petition the evidence must be " 'reasonable, credible, and of solid value' " such that the court reasonably could find the child to be a dependent of the court by clear and convincing evidence. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924 [171 Cal.Rptr. 637, 623 P.2d 198].) On appeal, we review the record as a whole in the light most favorable to the court's order and we indulge every inference in favor of the court's decision so long as those inferences are " 'a product of logic and

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Father is not a party to this appeal.

reason' and '. . . rest on the evidence' [citation]" not on "mere speculation or conjecture." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633 [29 Cal.Rptr.2d 191].)

 Section 300, subdivision (b) provides that a child is subject to juvenile court jurisdiction if the child "has suffered, or there is a substantial risk that the child will suffer, *serious physical harm* or illness, *as a result of* the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." (Italics added.) Most of the evidence in this case consisted of reports that on a few occasions R.M. watched adult films on his parents' computers and televisions, dressed in women's clothing, and spied on his sister in the shower. None of this behavior posed a threat of "serious physical harm" to R.M. or S.M.

We grant that the record contains evidence of a more serious nature. Both children admitted engaging in "inappropriate sexual conduct" with each other. This conduct consisted principally of the children rubbing their hands on each others' private parts—sometimes with their clothing on, sometimes with their clothing off. There was also evidence that S.M. told her therapist, who told the DCFS worker, that on several occasions R.M. rubbed his penis against S.M.'s buttocks.

 Nothing in the record, however, supports the conclusion that mother inadequately supervised her children, for whatever reason, or that mother should earlier have been aware of their inappropriate sexual conduct. For example, the record does not disclose when the conduct began, how frequently it occurred, or how long it continued. Nor is there any evidence that mother condoned or facilitated the conduct. On the contrary, the evidence shows that once mother became aware of the conduct she took steps to prevent it, including admonishing the children not to repeat the behavior, and going so far as locking the door to the bedroom where S.M. and she slept. Furthermore, there is no evidence that any inappropriate sexual conduct continued after mother admonished the children and began locking the bedroom door. Although evidence of past events may have some probative value in considering current conditions, to sustain a petition under section 300, subdivision (b) there must be evidence that the "circumstances existing *at the time of the hearing* make it likely the children will suffer the same type of 'serious physical harm or illness' in the future." (*In re Janet T.* (2001) 93 Cal.App.4th 377, 388 [113 Cal.Rptr.2d 163].) This is so because the statute states that a child may be considered a dependent " 'only so long as is necessary' " to protect the child from the risk of serious physical harm or illness. (*Ibid.*)

Furthermore, the record contains *no evidence* that this conduct occurred "as a result of" mother and father's "divergent approaches to parenting" or mother's "physical and emotional problems."

Nor is there any evidence in the record to support the court's finding that mother's "physical and emotional problems" occasionally "render her unable to provide adequate care and supervision for the children." There was no evidence that she had any physical or emotional problems that interfered with her parenting. Rather, the only evidence on the subject tended to prove the opposite.

In a 2003 evaluation prepared for the family law court, Dr. Stan Katz, a clinical and forensic psychologist, concluded that mother's depression and physical disabilities had no adverse effects on her parenting. Katz stated: "As a parent, [mother] presents herself as child centered and empathic towards her children's needs. She possesses adequate childcare skills, knowledge and positive parenting attitudes. She knows her children well, enjoys activities with them and is not enmeshed or overidentified with them. *The data does not reveal any significant parenting deficits.*" (Italics added.) Dr. Katz found that mother "is able to meet her children's basic material needs including food, shelter, clothing, health and nutrition" and that although "[s]he seems to have some difficulty setting limits with [R.M.] . . . [f]or the most part, she is able to actively perceive danger and potential harm to her children and is capable of protecting them from physical and emotional injury."[3]

In a March 2008 letter to the court, R.M.'s psychiatrist, Dr. Eugene Morong, who had been treating R.M. for approximately eight years for attention deficit disorder, hyperactivity and oppositional defiant disorder stated: "I can only express admiration for the devotion and consistency of [mother's] concern for her children and the tenacity in which she has sought assistance for them including medication for her son and psychotherapy for both children when that became indicated."

In its brief in support of the dependency court's findings, the DCFS cites evidence that mother and father continue to battle over child support and custody. This battle, the DCFS contends, endangers the children's mental health and led to R.M.'s sexual abuse of his sister. The record does not support the DCFS. A report by a court-appointed psychologist, filed a month *after* the court sustained the petition, concluded that the children were suffering "significant underlying emotional difficulty" as a result of being in the middle of their parents' "turbulent, tumultuous relationship." The report,

---

[3] Mother's subsequent intervention to protect S.M. from sexual molestation by her brother bears out Dr. Katz's observation.

however, drew no connection between that emotional difficulty and R.M.'s sexual abuse of his sister. On the contrary, the report found that "projective testing does not provide any indicators of significance to raise the risk of further sexual acting out by [R.M.] against his sister."

Lastly, with regard to allegations by father and an alleged "friend" of mother's that mother is "emotionally abus[ing]" the children, they are too vague and lacking in support to constitute substantial, credible evidence.

In light of our determination that the jurisdictional order must be reversed, the dispositional order placing the children outside mother's home and all subsequent orders as to mother must be reversed as well.

## DISPOSITION

The orders of the juvenile court as to mother are reversed. The court is ordered to dismiss the petition as to mother and return the children to the custody of their mother forthwith unless new circumstances would justify a new finding of jurisdiction. This opinion is final on filing.

Mallano, P. J., and Weisberg, J.,* concurred.

---

*Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.