Filed 3/1/18; Certified for Publication 3/22/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re E.D., a Person Coming Under the Juvenile Court Law. | B284657<br>(Los Angeles County<br>Super. Ct. No. DK21342) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>PAUL D.,<br><br>　　Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kristen Byrdsong, Commissioner. Affirmed in part and reversed in part.

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

_____

Paul D. (father) appeals from the juvenile court's order of dependency jurisdiction over E.D. (child), age two, under Welfare and Institutions Code section 300, subdivision (b)(1) (failure to protect),[1] on the ground that the order was not supported by substantial evidence. As the evidence was insufficient to show a substantial risk of serious physical harm or illness to the child, we reverse the juvenile court's order as to father only.

## BACKGROUND

### I. The domestic violence incident

On May 12, 2015, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging emotional abuse by father and general neglect by mother (who is not a party to this appeal). The referral alleged that father struck mother while she was holding child. At the time of the incident, child was only two months

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

old, mother was 17 years old, and father was 21 years old. Mother indicated to the police at the time of the incident that father had never threatened or used a weapon against her and had never threatened to kill her, and that she was not in fear of her safety. Following the incident, mother obtained a restraining order against father on behalf of herself and child; mother ended her relationship with father; and DCFS deemed the referral inconclusive on those grounds. The restraining order provided, inter alia, that father was to have "no personal, electronic telephonic, or written contact" with mother or child, except for court-ordered visitation and the safe exchange of child.

## II. Mother's arrest

On January 6, 2017, mother and child were passengers in a vehicle stopped by the police for a traffic violation. During the stop, the police discovered 11 grams of methamphetamine (meth) and two grams of marijuana on mother. Mother disclosed to the police that she frequently used meth and had last used the drug three days earlier. Mother also stated she was on her way to the paternal grandmother's home, where father lived, because he cared for child on weekends, while she cared for child on weekdays. Police arrested mother for felony possession of meth for sale. This incident resulted in a child welfare referral to DCFS.

## III. DCFS's prepetition investigation and petition

### A. THE PREPETITION INVESTIGATION

On January 11, 2017, a DCFS social worker went to the paternal grandmother's home, where she encountered

3

both father and mother.  Father informed the social worker that the paternal grandmother was away on errands and that he was taking care of child while mother was asleep in another room.  The social worker observed that child was "appropriately dressed" and "running around playing."  The social worker interviewed mother and father individually.

Mother told the social worker that she began using meth approximately 18 months earlier.[2]  She typically used meth when child was on weekend visits with father, though she admitted also using meth while child was in her care.  She claimed father did not know she still used meth because they had "little contact."  Mother also stated that "she went to court . . . to get the [restraining] order lifted but the judge would not allow it until [father] completed a court ordered domestic violence class."

Father admitted to the social worker that he had repeatedly violated the restraining order based on his continuing physical contact with mother and child.  He claimed the paternal grandmother took care of child during weekend visits, though he acknowledged having contact with child because he also lived in the home.  Father additionally stated he had enrolled in a 52-week domestic violence batterer's program following the domestic violence incident and provided to the social worker a document that appeared

---

[2] Approximately two weeks later, in late January 2017, mother reported to a DCFS consultant that she began using methamphetamine four years earlier.

4

to be a sign-in sheet indicating he had started the program in February 2016 and had attended 38 sessions since that time.

That same day, after concluding her interviews of mother and father, the social worker made a temporary safety plan that was agreed upon by the parents. Among other things, the plan provided that child would be supervised by either the paternal grandmother or the maternal grandfather at all times and that the parents were prohibited from having any unsupervised contact with child.

The social worker subsequently investigated mother and father's criminal histories. Mother had a misdemeanor conviction for reckless driving in 2016 and arrests for driving under the influence of drugs in 2016, and possession of meth for sale in 2017. Father had a felony conviction for assault by means likely to produce great bodily injury in 2013, and misdemeanor convictions for possession of meth in 2014 and corporal injury on a spouse or cohabitant in 2015, along with several arrests in 2013-2014 for drug- and violence-related crimes.

B.    THE PETITION

On February 6, 2017, DCFS filed a petition on behalf of child under section 300, subdivisions (a) and (b). The petition generally alleged child was at risk of physical harm based on father's actions during the domestic violence incident, father's convictions for violent crimes, and father's violation of the restraining order and mother's history of substance abuse and her possession of meth while in a

5

vehicle with child.  At the detention hearing held that same day, the juvenile court found father to be child's presumed father, detained child from both parents, granted the parents monitored visits, ordered father and mother to submit to drug testing, and further ordered mother to enroll in substance abuse and parenting programs.

## IV.    The jurisdiction and disposition hearing

On April 28, 2017, the juvenile court held a combined jurisdiction and disposition hearing.  At the hearing, the court admitted into evidence three documents:  the DCFS's prepetition detention report and two post-petition reports—a jurisdiction and disposition report, dated April 4, 2017; and a last minute information report, dated April 28, 2017.

The jurisdiction and disposition report, inter alia, stated that both father and mother confirmed that father had struck mother once—a single punch or slap to the forehead—which led to the restraining order.  The jurisdiction and disposition report also stated that child "appears to be developing in a timely manner and reaching her developmental milestones in all areas except speech."  A DCFS assessment of child found, inter alia, that father was affectionate and protective of child and that child enjoyed interactions with father.

The last minute information report advised the juvenile court that father had informed the social worker that he had completed his domestic violence batterer's program and had enrolled in individual counseling.  In addition, the report stated that father's probation officer had

6

told DCFS's representative that father was "in compliance and reports in on a regular basis" and that the probation officer "does not have any concerns [about father] at this time."

At the hearing, the juvenile court dismissed the count brought pursuant to section 300, subdivision (a) [child had suffered or was at risk of suffering nonaccidental harm] and sustained the counts brought pursuant to section 300, subdivision (b) [child had suffered or was at risk of suffering harm]. The court found jurisdiction over the father for two principal reasons: First, despite the existence of the criminal protective order, father continued to have "significant physical contact" with mother and child. Second, the court believed father to be less than truthful. Specifically, the juvenile court found that neither father's representations to the police about his 2013 assault conviction[3] nor his denial of any knowledge about mother's drug use were credible.

---

[3] Father told DCFS's social worker that he was convicted "because he was riding in a car with his friend and his friend was carrying a weapon" and was advised by his court-appointed attorney to plead guilty "so that he could get out of jail more quickly." The police report for the incident, however, tells a somewhat different story. According to the police report, the victims, who identified father in a photographic lineup, stated that father approached them near an alley, displayed a handgun, and then called out a gang's name, which caused the victims to become fearful, flee the scene, and call the police. In his voluntary

With regard to disposition, the juvenile court found that "by clear and convincing evidence that remaining in the home of parents would pose substantial danger to the child's physical health, safety, and emotional well-being." Accordingly, the court declared child a dependent of the court, removed child from both parents' custody, but allowed monitored visitation by parents and ordered DCFS to provide family reunification services.

As for father's reunification plan, the court ordered father to (a) submit to six consecutive drug tests with the further provision that if any of those tests were missed or "dirty," father would be required to complete a full drug rehabilitation program and (b) complete a domestic violence program, a parenting program, and individual counseling. Father's counsel objected unsuccessfully to the drug testing requirement on the ground that "what's been sustained is mother's drug use, not father's drug use." Father timely appealed.

## DISCUSSION

### I. Father's appeal is "justiciable"

Father contends that the evidence is insufficient to support the court's jurisdictional finding as to him. DCFS argues, however, that, because the jurisdictional findings as to mother are uncontested, we would not reverse the juvenile

statements to the police, father denied all involvement, stating, as he did later to the social worker, that he had been picked up by his friends in their car shortly before the police pulled them over.

court's jurisdictional finding even if father's arguments were accepted. (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1489.) DCFS consequently asks us to dismiss this appeal for lack of a justiciable issue.

As a general rule, " 'a minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions.' " (*In re X.S.* (2010) 190 Cal.App.4th 1154, 1161.) However, California courts have held that discretion may be exercised to reach the merits of the other parent's jurisdictional challenge "in three situations: (1) the jurisdictional finding serves as the basis for dispositional orders that are also challenged on appeal; (2) the findings could be prejudicial to the appellant or could impact the current or any future dependency proceedings; and (3) the finding could have consequences for the appellant beyond jurisdiction." (*In re A.R.* (2014) 228 Cal.App.4th 1146, 1150; accord *In re J.C.* (2014) 233 Cal.App.4th 1, 3–4; *In re Quentin H.* (2014) 230 Cal.App.4th 608, 613 (*Quentin H.*); *In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1316–1317 (*Christopher M.*); *In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763 (*Drake M.*).)

Father contends the last two factors apply here, and urges us to consider the merits of his appeal. In *Quentin H.*, *supra*, 230 Cal.App.4th 608, *Christopher M.*, *supra*, 228 Cal.App.4th 1310, and *Drake M.*, *supra*, 211 Cal.App.4th 754, the reviewing courts each found that the distinction between being found an "offending" parent versus a "nonoffending" parent "may have far reaching implications

9

with respect to future dependency proceedings . . . and father's parental rights." (*Drake M.*, at p. 763; *Quentin H.*, at p. 613; *Christopher M.*, at p. 1317; see § 361.2, subd. (a) [governing placement of a dependent child with a noncustodial parent][4].)

Since father's status as either an offending or nonoffending parent may have far-reaching consequences in future dependency proceedings, we exercise our discretion to consider father's jurisdictional challenge.

## II.  Standard of review

We review the juvenile court's jurisdictional findings for substantial evidence.  (*In re John M.* (2013) 217 Cal.App.4th 410, 418 (*John M.*).)  "The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value."  (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.)  Although substantial evidence may consist of inferences, the inferences must be logical, reasonable and supported by

---

[4] "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child.  If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."  (§ 361.2, subd. (a).)

evidence; the inferences cannot be the product of speculation or conjecture. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393–1394.)

We review the evidence in the light most favorable to the juvenile court's findings and draw all reasonable inferences in support of those findings. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) We may not "consider whether there is evidence from which the dependency court could have drawn a different conclusion," but are limited to determining "whether there is substantial evidence to support the conclusion that the court did draw." (*In re Noe F.* (2013) 213 Cal.App.4th 358, 366.) The juvenile court's determination "will not be disturbed unless it exceeds the bounds of reason." (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.)

## III. The jurisdictional order was not supported by substantial evidence of a substantial risk of serious physical harm or illness

### A. GUIDING PRINCIPLES

Section 300, subdivision (b)(1) provides for dependency jurisdiction where "[t]he child has suffered, or there is a *substantial risk* that the child will suffer, *serious physical harm or illness,* as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." (Italics added.) "The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." (*Ibid.*)

11

" ' "A jurisdictional finding under section 300, subdivision (b) requires:  ' "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the child, or a 'substantial risk' of such harm or illness."  [Citation.]' [Citations.]  The third element 'effectively requires a showing that *at the time of the jurisdictional hearing* the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur).' " ' "  (*In re Jesus M.* (2015) 235 Cal.App.4th 104, 111, italics added.)

Section 300, subdivision (b), in other words, requires a showing of "*concrete* harm or risk of physical harm to the child."  (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 821, italics added.)  "As appellate courts have repeatedly stressed, ' "[s]ubdivision (b) means what it says.  Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical* harm or illness." ' "  (*In re Jesus M.*, *supra*, 235 Cal.App.4th at p. 111.)

" 'In evaluating risk based upon a single episode of endangering conduct, a juvenile court should consider the nature of the conduct and all surrounding circumstances.  It should also consider the present circumstances, which might include, among other things, evidence of the parent's current understanding of and attitude toward the past conduct that endangered a child, or participation in educational

12

programs, or other steps taken, by the parent to address the problematic conduct in the interim, and probationary support and supervision already being provided through the criminal courts that would help a parent avoid a recurrence of such an incident.  The nature and circumstances of a single incident of harmful or potentially harmful conduct may be sufficient, in a particular case, to establish current risk depending upon present circumstances.' [Citation.]  We must have a basis to conclude there is a substantial risk the parent's endangering behavior will recur." (*John M.*, *supra*, 217 Cal.App.4th at p. 418–419.)

B.    THE  JUVENILE COURT'S JURISDICTIONAL FINDINGS AS TO FATHER WERE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

DCFS argues that this case is analogous to *John M.*, *supra*, 217 Cal.App.4th 410.  For his part, father contends that *In re Daisy H.* (2011) 192 Cal.App.4th 713 (*Daisy H.*) controls.  Although neither case is directly on point, father has the better argument.

In *John M.*, *supra*, 217 Cal.App.4th 410, this court upheld a juvenile court finding of jurisdiction under section 300, subdivision (b) based upon domestic violence, even though the child had not yet been injured.  The parents had a history of verbal altercations and hitting each other.  The immediate event leading to dependency court jurisdiction was an incident in which the father repeatedly hit the mother while they were driving home from a party and then continued to strike her when they arrived home.  (*Id.* at pp. 416–419.)  The father was prosecuted and received

13

prison time for the incident. (*Ibid*.) This court held that "the parents' history of domestic violence evidences an ongoing pattern that, while not yet causing harm to John, presented a very real risk to John's physical and emotional health. Both parents hit each other; verbal altercations were frequent; and father engaged in reckless driving with mother in the car." (*Id*. at p. 419.) *John M*. is inapposite because, on the record before us, there is no similar history of physical abuse and verbal altercations between child's parents.

On balance, this case is more like *Daisy H*., *supra*, 192 Cal.App.4th 713. In *Daisy H*., the mother claimed the father choked and pulled her hair, but the incident happened "at least two, and probably seven, years" before the dependency petition was filed. (*Id*. at p. 717.) There was no evidence the alleged hair-pulling and choking occurred in the children's presence, the children denied ever seeing domestic abuse between their parents, and they stated they were not afraid of their father. (*Ibid*.) On these facts, the *Daisy H*. court found the evidence insufficient to support a finding that the acts of domestic violence placed the children at a substantial risk of physical harm, stating: "Physical violence between a child's parents may support the exercise of jurisdiction under section 300, subdivision (b) *but only if there is evidence that the violence is ongoing or likely to continue* and that it directly harmed the child physically or placed the child at risk of physical harm." (*Ibid*., italics added.)

Here, as in *Daisy H*., *supra*, 192 Cal.App.4th 713, there is no evidence that at the time of the jurisdictional hearing

14

that the domestic violence between mother and father was on-going or likely to continue. There was, for example, no evidence of any repeat behavior by father since the 2015 incident or even any evidence of escalating arguments, such as the one between mother and father that gave rise to the domestic violence incident in 2015.[5] In fact, there was only the one incident of domestic violence and, as in *Daisy H.*, it was relatively remote in time from the jurisdictional and dispositional hearing. Moreover, the evidence showed that between the time of the lone domestic violence incident and the hearing, father had acknowledged his misconduct and had taken concrete steps to correct his behavior going forward. He had completed his domestic violence batterer's program and had enrolled in individual counseling. His probation officer found him to be acting in a responsible manner and had no concerns that father would relapse at the time of the hearing. In addition, the DCFS social worker found father "loving and nurturing to the child."

---

[5] According to father, the 2015 domestic violence incident arose over a disagreement between the parents on whether mother should cut child's fingernails. The disagreement escalated to mother screaming. When paternal grandmother tried to intervene, mother called the paternal grandmother a "bitch," which, in turn, prompted father to strike mother once on the forehead. Mother could not recall exactly what gave rise to the incident, only that father "slapped" or "punched" her once on the forehead.

In short, the evidence was insufficient to support the juvenile court's finding of dependency jurisdiction over the child under section 300, subdivision (b) as to father, because there was no evidence of a substantial risk of serious physical harm or illness to the child from father. Without proper jurisdiction, the juvenile court had no authority to issue a dispositional order as to father. (*In re R.M.* (2009) 175 Cal.App.4th 986, 991.)

## DISPOSITION

The jurisdiction and disposition order is reversed as to father. In all other respects, the order is affirmed.

JOHNSON, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 3/22/18

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| In re E.D., a Person Coming Under the Juvenile Court Law. | B284657 (Los Angeles County Super. Ct. No. DK21342) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> PAUL D., <br><br> Defendant and Appellant. | CERTIFICATION AND ORDER FOR PUBLICATION |


The opinion in the above-entitled matter filed March 1, 2018, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.



ROTHSCHILD, P. J.          JOHNSON, J.          BENDIX, J.*

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.