Filed 11/12/21  In re Elian V. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ELIAN V. et al., a Person Coming Under the Juvenile Court Law. | B308114 (Los Angeles County Super. Ct. No. 20CCJP04112) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| ELEANA V., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Jana M. Seng, Judge.  Reversed.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

_____

Eleana M. (Mother) appeals from the juvenile court's jurisdiction finding, disposition order, and order terminating jurisdiction and entering a juvenile custody order. Mother contends there is not substantial evidence to support the jurisdiction finding under Welfare and Institutions Code[1] section 300, subdivision (b)(1), that Mother endangered seven-year-old Elian V.'s physical health and safety and placed him at substantial risk of physical harm by accusing Francisco V. (Father) and his wife of abuse, coaching Elian to make false allegations, and subjecting Elian to unnecessary interviews and physical exams. We agree and reverse the jurisdiction finding and all subsequent orders.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Prior Dependency Case and Custody Orders*

On December 3, 2013 the juvenile court declared then-four-month-old Elian a dependent of the court under section 300, subdivision (b)(1), based on the sustained allegations that on November 10, 2013 Mother attempted to strike Father with a machete and had a history of substance abuse, including

_____

[1] Further statutory references are to the Welfare and Institutions Code.

methamphetamine, cocaine, marijuana, and alcohol, which rendered her incapable of providing regular care to Elian. Further, on October 31, 2013 Mother was under the influence of marijuana while caring for Elian.  On February 17, 2015 the juvenile court terminated jurisdiction and entered a juvenile custody order granting Mother and Father joint legal custody with Father having sole physical custody and Mother having monitored visitation.[2]

B.    *The Current Referrals and Investigation*

On February 12, 2018 the Los Angeles County Department of Children and Family Services (Department) received a referral alleging Elian's stepmother Jessica V. kissed and played with then-four-year-old Elian's penis when he got out of the shower. Jessica also allegedly slapped Elian on his back.  The allegations were determined to be unfounded after Elian stated Mother told him to lie and recorded his lies.[3]

---

[2]    On July 2, 2018 the family court issued a judgment of dissolution granting the parents joint legal custody, with Father having primary physical custody.  The court awarded Mother overnight visits monitored by the maternal grandmother on Sundays and Wednesdays and unsupervised visits on Sundays during the day and Wednesdays in the evening.

[3]    A November 2016 referral alleged Father, paternal grandmother, and Jessica physically abused Elian; the Department determined the allegations were unfounded.  The Department also received five referrals in 2018 alleging Jessica physically abused Elian.  The Department determined the allegations in two of the referrals were inconclusive because Elian made conflicting statements.  Elian initially said Jessica hit him on the shoulder, leg, chest, and back.  However, Elian

On February 6, 2020 the Department received another referral alleging then-six-year-old Elian disclosed Jessica touched his penis "all the time." Elian initially told police officers that Jessica touched him 20 times over his clothing when he was three to four years old. During subsequent forensic exams, Elian reported Mother told him to say that Jessica touched his penis so he and Mother could spend more time together. Elian denied anyone inappropriately touched him. The social worker determined the allegations of sexual abuse by Jessica and emotional abuse by Mother were inconclusive.

On July 15, 2020 the Department received another referral alleging Jessica physically and sexually abused then-seven-year-old Elian. During a medical exam, Elian told the doctor Jessica touched and kissed his penis and hit his chest with her fists and a belt. The doctor performed an examination of Elian and did not observe any marks, bruises, or signs of trauma on Elian's chest or genitals. The doctor believed Mother possibly suffered from mental health issues. Mother wanted Elian to be immediately removed from Father's home during the Department's investigation,[4] and she threatened to sue the Department if nothing was done to protect Elian.

---

later told a social worker that Jessica did not hit him and Mother told him to lie. The Department determined the other referrals were unfounded, inconclusive, or evaluated out (not referred for investigation).

[4] On July 27, 2020 Mother requested an emergency family court hearing to obtain full physical custody of Elian. The family court denied Mother's petition based on insufficient evidence.

On July 20, 2020 a social worker separately interviewed Mother and Elian. Elian said Jessica touched him and kissed his penis 10 times when he was three to four years old. But Elian later stated the abuse happened when he was six years old. Elian also accused Jessica of hitting him with a belt and her fist when he was four years old. Elian said he did not like living with Father because "'Jessica does bad stuff.'" Elian denied saying everything was a lie in the prior investigation. During Mother's interview, the social worker observed Mother "did not present as having any mental health issues and did not appear to be under the influence of alcohol or drugs." Mother was concerned about Elian's safety in Father's home because Elian had previously reported sexual and physical abuse by Jessica.

The social worker later interviewed Father and paternal grandmother Coralia V. at their home. Coralia stated she stays home to care for Elian while Father and Jessica are at work. Because of Mother's history of making sexual abuse allegations against Jessica, Jessica was never alone with Elian. The family shared one bedroom with Coralia and Elian sleeping in the bottom bunk bed and Father and Jessica sharing a queen-size bed. Coralia had no concerns that Jessica was sexually or physically abusing Elian.

Father stated Mother had a history of substance abuse and used drugs before and after Elian was born. Father also believed Mother had mental health issues. Father reported Elian was usually well-behaved and neither he nor Jessica used physical discipline on Elian. However, Father was concerned that the continued questioning of Elian about the allegations would emotionally affect Elian. According to Father, Elian did not want

to visit Mother, and Father sometimes had to bribe Elian to visit her.

Jessica denied she physically or sexually abused Elian. During the four years that Jessica had been in a relationship with Father, she had not had a normal relationship with Elian because Mother continually accused her of abuse and manipulated Elian to tell lies. The last time Jessica cared for Elian was when he was three years old.

The social worker also spoke with Detective Gentle Winter, who had interviewed Elian in February 2020 and again in July 2020 regarding Elian's allegations. Detective Winter was concerned that if Mother continued to make false allegations, it could possibly affect Elian's mental stability.

On August 3, 2020 the juvenile court issued an order removing Elian from Mother's care.

C.     *The Dependency Petition and Detention*

On August 5, 2020 the Department filed a dependency petition on behalf of Elian under section 300, subdivision (b)(1). The petition alleged Mother "subjected [Elian] to numerous unnecessary interviews with social workers, law enforcement officers and medical professionals as well as subjected the child to physical exams, as a result of the mother's allegations of abuse to the child by the father. The mother coached the child to make false allegations of abuse against the father and [Jessica]. The detrimental and endangering situation created for [Elian] by the mother endangers the child's physical health and safety and places the child at risk of serious physical harm, damage, and danger." At the August 10 detention hearing, the juvenile court

6

detained Elian from Mother and released him to Father's home, with monitored visitation for Mother.

D.    *The Jurisdiction and Disposition Report*

The August 19, 2020 jurisdiction and disposition report reported Mother had convictions in 2007 and 2015 for inflicting corporal injury on a spouse or cohabitant and a 2014 conviction for assault with a deadly weapon (the machete incident).

Maternal grandmother Inez O. told the dependency investigator that Father was manipulating Elian and making him lie. In addition, Father had been violent toward Inez's partner and threw a book at him.

Elian told the dependency investigator, "'I am going to tell you the great truth. My mom tells me to say those things.'" Elian reported the maternal grandmother also told him to say that Jessica touched and hit him. Elian stated he felt "'[b]ad, because those are things that have never happened here.'" Elian added, "'I feel like they are controlling me. They tell me what to say and how to lie.'" Elian reported that when he told Mother he did not want to lie, Mother got mad, cried "ugly" like a pig, and told Elian that he loved her only a little. Elian said Father, Coralia, and Jessica did not tell him to lie. Elian went to Father and Coralia when he felt unsafe. Elian wanted to continue living with Father with daytime visits once a month with Mother.

Father reported Mother and Inez had stood outside his apartment building and insulted him, Coralia, and Jessica. Jessica confirmed Mother and Inez harassed her in public by calling her a rapist. Jessica wanted to develop a close relationship with Elian, but she was scared because of Mother's false allegations against her. Coralia reported she used to help

7

with the custody exchange at the police station, but she stopped because Mother verbally insulted her.

Father and Coralia stated Elian was well-behaved, respectful, and caring. But Father believed Mother's conduct was affecting Elian. Elian told Father he did not like Wednesdays and Sundays, which were the days he visited Mother. Mother told Elian he did not speak proper English, causing Elian to be insecure and to prefer to speak in Spanish. Mother also criticized Elian for eating too slowly and too little, leading Elian to research online how much food was appropriate for a child to eat.

A staff member from Elian's school reported that Elian arrived at school on time during Father's custody days, but Elian was late when Mother had custody, and Mother sometimes smelled of marijuana. However, Elian was doing well academically and was a sweet and respectful boy.

E.      *Last Minute Information for the Court*

The October 2, 2020 last minute information for the court reported that Mother still had not responded to the calls and letters from the dependency investigator. Mother explained she did not respond because she did not have a working phone. Mother later agreed to a meeting on September 30 with her lawyer present, but she did not show up to the meeting or return the social worker's subsequent calls.

Father stated Elian was doing well, and he had no concerns about Elian's behavior or well-being. However, Elian did not want to visit Mother and appeared anxious about the visits, constantly asking what day of the week it was. Elian would return from visits appearing sad, tired, and not wanting to eat.

Elian started therapy on September 3, 2020. The intake therapist reported Elian initially would look to Father for prompting and reassurance, but during the interview Elian was very open and comfortable expressing his feelings. Elian told the therapist he was nervous, scared, and anxious that Mother would be around where Elian lived. Elian described Mother as mean because of her tone of voice and how quickly she got mad.

F.      *The Jurisdiction and Disposition Hearing*

At the October 5, 2020 jurisdiction and disposition hearing, Mother's attorney argued the juvenile court should dismiss the petition because the Department failed to prove under section 300, subdivision (b)(1), that Elian was at substantial risk of physical harm. Mother's attorney asserted Elian's feelings of sadness and stress were emotions that fall under section 300, subdivision (c), which was not pleaded as a basis for jurisdiction. He continued, "Let's say everything is true. If there's an ongoing custody dispute and my client is making continuing accusations about the father and the father's female companion and that subjects the child to unnecessary interviews with social workers, law enforcement, and medical professionals, where is the child at risk of serious physical harm?"

The Department's attorney argued the evidence supported the allegation Elian was at substantial risk of serious physical harm or illness, but it did not support jurisdiction under section 300, subdivision (c), because "[t]he criteria by which the court has to sustain a (c) is where there is severe anxiety, withdrawals, depression, or aggressive behavior towards self or others. Typically, these are children with history of hospitalization, self-injurious behaviors." She added, "We don't

have that in this case. What we do have is . . . Mother's continuous behaviors . . . subjecting her child to the exams . . . . They were physical exams that included a check of the child's private areas, full physical examination based on Mother's representations and Elian's statements in being coached by Mother to make allegations against Father." She also contended Mother's behavior caused Elian to suffer physical illness because Elian refused to eat and had anxiety and stress.

The juvenile court sustained the allegations under section 300, subdivision (b)(1), explaining, "The minor's therapist reported that the minor was feeling nervous, scared, and anxious. This is corroborated by the minor's own statements to the social worker, the observations and statements by . . . Father . . . and the observations and statements by the paternal grandmother. [¶] The court does find that Mother's behavior or acts of repeatedly subjecting the minor to numerous interviews by the social worker, law enforcement and medical professionals, does place this minor at substantial risk of harm. The emotional and mental harm that the minor indicated has manifested and resulted in the physical illness, which is the nexus of the substantial risk of harm to the child, indicated by the Department as the minor having appeared sad, tired, and would not eat or manifestations of the harm that the mother has placed the minor in. The court does find there is a current risk of harm. [¶] Mother does not appear to have resolved the issues that have brought the matter before the court, refusing to cooperate with the Department, not subjecting herself to interviews, no progress in any programs or services. The court does find that the Department has met its burden by a preponderance of the evidence."

The juvenile court declared Elian a dependent of the court, removed him from Mother's physical custody, and placed him with Father. The court found it would be in Elian's best interest to terminate jurisdiction with a juvenile custody order granting Father sole legal and physical custody of Elian with monitored visitation for Mother. The court stated it would terminate jurisdiction upon receipt of the juvenile custody order.

Mother timely appealed from the October 6, 2020 jurisdiction finding and disposition order.

G.     *Subsequent Orders*

At the October 16, 2020 hearing, the juvenile court terminated jurisdiction and signed and entered a juvenile custody order awarding Father sole legal and physical custody of Elian. The court granted Mother monitored visits on Wednesdays after school until 8 p.m. and Sundays from 8 a.m. to 6 p.m. On March 24, 2021 Mother filed a motion to augment the record to include the October 16 order terminating jurisdiction and entering the juvenile custody order. Mother also filed a motion to construe her notice of appeal to be from both the October 5, 2020 jurisdiction findings and disposition order and the October 16, 2020 order terminating jurisdiction and entering a juvenile custody order. We granted Mother's motions.

11

## DISCUSSION

A.   *The Jurisdiction Finding Under Section 300, Subdivision (b)(1), Is Not Supported by Substantial Evidence*

    1.   *Governing law and standard of review*

"Section 300, subdivision (b)(1), authorizes a juvenile court to exercise dependency jurisdiction over a child if the 'child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, or . . . by the inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness, developmental disability, or substance abuse.'" (*In re L.W.* (2019) 32 Cal.App.5th 840, 848; accord, *In re E.E.* (2020) 49 Cal.App.5th 195, 205.)  Section 300, subdivision (b)(1), requires the Department to demonstrate three elements by a preponderance of the evidence: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child, (2) causation, and (3) serious physical harm or illness or a substantial risk of such harm or illness.  (*In re E.E.*, at p. 205; *In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561.)

"Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child [citation].  The court may consider past events in deciding whether a child presently needs the court's protection." (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215-1216; accord, *In re J.M.* (2019) 40 Cal.App.5th 913, 921.)

12

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'" (*In re I.J.* (2013) 56 Cal.4th 766, 773; accord, *In re R.T.* (2017) 3 Cal.5th 622, 633; *In re D.B.* (2018) 26 Cal.App.5th 320, 328.) "Substantial evidence is not synonymous with any evidence. [Citation.] To be substantial, the evidence must be of ponderable legal significance and must be reasonable in nature, credible, and of solid value." (*In re M.S.* (2019) 41 Cal.App.5th 568, 580; accord, *In re J.A.* (2020) 47 Cal.App.5th 1036, 1046.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E., supra*, 49 Cal.App.5th at p. 206; accord, *In re D.B.*, at pp. 328-329.)

> 2. *The jurisdiction finding is not supported by substantial evidence*

"'"Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical* harm or illness."'" (*In re Jesus M.* (2015) 235 Cal.App.4th 104, 111 [evidence that children suffered emotional distress from

13

father's harassment of mother in violation of restraining order and his denigration of mother to children did not support jurisdiction finding under § 300, subd. (b)(1)]; accord, *In re Israel T.* (2018) 30 Cal.App.5th 47, 52 [reversing jurisdiction finding under § 300, subd. (b)(1), where juvenile court struck language in dependency petition alleging children were at substantial risk of serious physical harm from small plastic bags found in home with trace amounts of methamphetamine]; *In re Janet T.* (2001) 93 Cal.App.4th 377, 389-391 [reversing jurisdiction finding under § 300, subd. (b)(1), based on mother's failure to ensure children attended school and mother's mental and emotional problems because there was no evidence children were at substantial risk of serious physical injury or illness].)

The juvenile court based its jurisdiction finding under section 300, subdivision (b)(1), on the fact Elian's intake therapist reported Elian was feeling nervous, scared, and anxious, and Father reported Elian appeared sad, tired, and not willing to eat after visits with Mother due to her continuous coaching of Elian to make false allegations against Jessica.[5] Although Mother's conduct was reprehensible, there was not substantial evidence the conduct exposed Elian to a substantial risk of serious physical harm or illness. (§ 300, subd. (b)(1); *In re Jesus M., supra*, 235 Cal.App.4th at p. 111.) Elian was described by Father, Coralia,

---

[5] The Department argues on appeal that Mother's conduct placed Elian at substantial risk of suffering serious physical harm by subjecting him to repeated physical exams, including of his anal and genital areas. But there is no evidence in the record that Elian suffered any physical harm from the physical exams, nor does the Department point to any.

14

and the school staff member as a well-behaved, caring, and respectful boy who was doing well academically.  Although there is evidence Elian suffered emotional distress as a result of Mother's conduct, "[s]ection 300, subdivision (b), does not provide for jurisdiction based on '"emotional harm."'" (*In re Jesus M.*, at p. 112; accord, *In re Daisy H.* (2011) 192 Cal.App.4th 713, 718 [reversing jurisdiction finding under § 300, subd. (b)(1), where parents' prior domestic violence did not place children at current risk of substantial physical harm, and children were only at risk of emotional harm from father calling mother derogatory names].)  Accordingly, substantial evidence does not support the juvenile court's jurisdiction finding under section 300, subdivision (b)(1).[6]

In the absence of jurisdiction, the juvenile court had no authority to issue the disposition order or the juvenile custody order. (*In re Jesus M., supra*, 235 Cal.App.4th at p. 114; *In re R.M.* (2009) 175 Cal.App.4th 986, 991.)  Accordingly, we reverse the jurisdiction finding and all subsequent orders.

---

[6]    The dependency petition does not allege jurisdiction under section 300, subdivision (c), and as discussed, at the jurisdiction and disposition hearing the Department's counsel conceded the evidence did not support jurisdiction under this subdivision.

15

## DISPOSITION

The October 5, 2020 jurisdiction finding and disposition order and the October 16, 2020 order terminating jurisdiction and entering the juvenile custody order are reversed. The juvenile court is directed to dismiss the dependency petition.


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.