Filed 7/20/22  In re Detroy L. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re DETROY L. et al., Persons Coming Under the Juvenile Court Law. | B311193 (Los Angeles County Super. Ct. No. 20LJJP00807) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  DERRICK L.,  Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robin Kesler, Juvenile Court Referee.  Reversed and remanded with directions.

Law Office of Robert McLaughlin and Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

_____

Derrick L. (Father) challenges the jurisdiction findings and disposition orders declaring 15-year-old Detroy L., 12-year-old Micah L., nine-year-old Derico L., and eight-year-old Malik L. dependents of the juvenile court pursuant to Welfare and Institutions Code[1] section 300, removing them from Father's custody, and requiring Father to submit to drug testing. Father contends there is insufficient evidence to support the juvenile court's findings Father left the children without provision of care and the children were at risk of harm from Father's past criminal convictions of sex offenses and his status as a registered sex offender. Father also argues substantial evidence does not support the disposition order removing the children from Father's custody and requiring Father to test for drugs.

We agree with Father substantial evidence does not support the juvenile court's findings Father failed to provide or arrange for care of the children and the children were at substantial risk of sexual abuse by Father, and therefore reverse. As to the sexual abuse allegations, because the juvenile court based its finding on an incorrect understanding of one of Father's prior convictions and the presumption affecting the burden of

_____

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

2

production under section 355.1, subdivision (d), we remand for a new jurisdiction and disposition hearing.

**FACTUAL AND PROCEDURAL HISTORY**

A.    *The Referral and Investigation*

On November 10, 2020 the Los Angeles County Department of Children and Family Services (Department) received a referral alleging Barbara B. (Mother) and the maternal grandfather allowed Detroy, Micah, Derico, and Malik to watch pornography, and the children were being sexually abused by an unidentified person.  On November 13 a social worker visited the family home, where Mother and the children lived with paternal grandfather and the children's adult sibling, Daquan J.  Micah, Derico, and Detroy stated Mother's male companion Carlos T. sometimes lived in the home.  In private interviews with the social worker, each of the children denied watching pornography or being sexually abused.  The children were clean and appropriately dressed and reported having enough to eat.

However, Malik reported that a week earlier during a family trip to the beach (while they were in the hotel), Carlos hit Mother in the face with his fist causing Mother's nose to bleed.  Derico stated that during the trip Carlos pushed Mother against a wall causing her to fall and her nose to bleed.  Detroy and Micah reported Carlos and Mother argued, but the children denied the parents had a physical confrontation.

Mother told the social worker as to the hotel incident that Carlos "got in Detroy's . . . face" and was about to fight Detroy, but Mother and the maternal grandfather "broke it up."  When

3

Mother attempted to leave, Carlos "dragged her down stairs and made her go back into the house," scraping Mother's knees and elbows. Mother confirmed Carlos had assaulted her in the hotel room, causing her nose to bleed. However, she stated that everything was now "okay" between her and Carlos, and Carlos had never physically abused the children.

Mother stated she and Father were together for 14 years and shared custody of the children under "an informal agreement." Prior to Mother and Father's separation three years earlier, "'Father was around with the children.'" More recently, Father "'hasn't been around for personal reasons.'" Mother spoke with Father "almost daily," and the children saw Father "often." On November 19, 2020 a social worker interviewed Father, who stated he had not had any contact with the children since 2017. Father had "distanced himself from [Mother] because she had a drinking problem." The social worker reported, "Father said he had a drinking problem, too." Father stated he lived with the paternal grandmother and was "not currently stable to have the children in his care." But Father had family who could care for the children "if needed."

B.  *The Dependency Petition, Removal, and Further Investigation*

On December 18, 2020 the Department filed a dependency petition under section 300, subdivisions (a) and (b)(1), on behalf of Detroy, Micah, Derico, and Malik alleging Mother and Carlos had a history of engaging in domestic violence in the presence of the children, and Mother failed to protect the children. At the detention hearing on December 23, the juvenile court ordered the children released to the home of Mother with the children to have

4

no contact with Carlos. At Father's arraignment on January 20 2021, the court ordered monitored visitation for Father "with a written visitation schedule."

On January 25, 2021 the Department requested the children be removed from Mother and Father due to Mother's failure to protect the children from Carlos. Detroy reported Carlos was at Mother's home on December 27, 2020 and again on January 25, 2021, in violation of the juvenile court's no-contact order. In addition, on December 28 Carlos crashed his vehicle into the family apartment's complex, and his minor son was staying in the family home. Mother denied Carlos was in the home. Father stated he was unable to take custody of the children because of his current situation. He had family members who potentially could take the children but not at that time. On January 26 the juvenile court authorized the Department to remove the children from Mother and Father. The children were initially placed in foster care, but on January 27 they were placed with a paternal aunt at Mother's recommendation. At the February 2, 2021 detention hearing, Father's attorney requested the children be released to Mother, or alternatively, to Father with a conditional placement with the paternal aunt. The court denied Father's request and detained the children from Mother and Father.

On January 28, 2021 the Department conducted a search of the California Law Enforcement Telecommunication System (CLETS), which showed Father was a registered sex offender with felony criminal convictions in 1985 for lewd or lascivious acts on a child under 14 years of age (Penal Code, § 288, subd. (a)) and in 2005 for unlawful sexual intercourse with a minor who

5

is more than three years younger than the perpetrator (*id.*, § 261.5, subd. (c)).[2]

On February 2, 2021 a social worker interviewed Father regarding his convictions. Father stated his 1985 "conviction is 36 years old," and he declined to discuss it further, only noting "this matter keeps him from having a stable job." Father explained he stayed away from the children out of a concern his criminal history might "embarrass[]" them. But he loved his children, and his criminal history had "nothing to do with" them. Father usually lived in his car but was staying with the paternal grandmother due to the COVID-19 pandemic. Father added, "'I can't have my children. They are with my sister and that is good.'"

C.     *The First Amended Petition*

On February 16, 2021 the Department filed a first amended petition, alleging Father was required to register as a sex offender and suffered criminal convictions of sex offenses in 1985 and 2005 (§ 300, subd. (b)(1); count b-3), and Father could not assume or arrange for care of the children (*id.*, subds. (b)(1) & (g); count g-1), which placed the children at a substantial risk of serious harm.[3]

The February 16 last minute information for the court reported Father stated he had "'always been around [his]

---

[2]     Father was sentenced on the 1985 conviction to 365 days in county jail and four years' probation, and on the 2005 conviction to two years in state prison. Father was also convicted in 2005 of failure to register as a felony sex offender.

[3]     The first amended petition also alleged Mother violated court orders by allowing Carlos to visit the home.

children'" up until the last two years. The social worker confirmed Father was released on parole on September 10, 2007 and discharged on July 19, 2010 without any violations. According to the March 10 last minute information for the court, Father reported, "I have no restrictions to be around kids. . . . I would never harm my children." Father stated he did not currently have a job or any source of income, and he could not take care of the children at the time although he loved them. Father continued to have monitored visits with the children, which he said were going well. He also regularly spoke with the children by phone.

D.      *The Jurisdiction and Disposition Hearing*

At the March 15 jurisdiction and disposition hearing, Father's attorney requested the court dismiss all counts as to Father, arguing the Department failed to show Father was a current risk to the children because none of Father's convictions involved the children and Father had "no current criminal history for over ten years." Further, Father arranged for the care of the children with Mother before the Department filed the petition, and Father's "living situation should not be used against him." Father's attorney added the children were "suitably placed" with the paternal aunt. The children's attorney agreed Father did not present a current risk to the children based on his past criminal conduct and submitted as to the remaining counts against Father.

The Department argued Father was a registered sex offender, and he "did not provide any information that he has gone through counseling" or "taken awareness classes or sexual abuse classes for perpetrators." Further, Father admitted he

7

could not provide for the children, and he failed to make an appropriate plan for the children when they were detained.

The juvenile court sustained the allegations under section 300, subdivisions (b)(1) and (g).[4]  The court found as to the sexual abuse allegations that Father "is a registered sex offender with at least two convictions for sex [with a minor] under the age of 14."  The court explained, "[Father] has more than one conviction with lewd acts for children under the age of 14, two convictions.  One was a three-year-old child or younger. . . .  The [Penal Code, section 288, subdivision (a)] was in 1985.  And the [Penal Code, section 261.5, subdivision (c)] was in 2005.  But . . . Father has . . . continued to involve himself with sexual conduct with children.  [¶]  [T]hese kids are seven and older, up to 15.  In the court's mind, the conviction shifts the burden of proof to show that Father has rehabilitated himself. . . .  [H]e hasn't had any convictions in regards to this since then; however, I don't have any information of what he's done otherwise in counseling or programs.  It's real obvious the kids are in danger."  As to the allegation under section 300, subdivision (g), the court explained, "While I understand the difficulty with COVID, and [Father's] prior [criminal] history, he has been unable to provide care or support for the children."

As to disposition, Mother's attorney requested the children be placed with Mother, or at least that she be provided unmonitored visitation.  Father's attorney stated Father was willing to complete any case plan ordered by the court.  The

_____

[4]     The court sustained the allegation in count g-1 that Father failed to assume or arrange for the care of the children and to provide them with the basic necessities of life.  However, the court dismissed the identical allegation in count b-4.

8

children's attorney requested all four children be removed from Mother and Father. The children's attorney also clarified as to Father's 2005 conviction "there . . . was . . . at least a three-year age difference between Father and the victim" and the conviction did not involve "a child under the age of three." The court replied, "I did read it wrong. I thought it was a child three years or younger, but it's a difference in age of three years. Thank you very much for pointing this out." However, the court did not revisit its finding Father suffered at least two convictions for sex with children under the age of 14 or the jurisdiction finding based on the court's erroneous interpretation of Father's criminal record. The Department argued that given the risk posed by Father, he should be "bypass[ed]," with no reunification services.

The juvenile court removed the children from Mother and Father and ordered reunification services for both parents. As to Father, the court ordered up to three monitored three-hour visits each week, but it required any liberalization of visits be approved by the court. The court also ordered Father to comply with any criminal order requiring him to register as a sex offender, to submit to random and on-demand drug testing, and to complete sexual abuse counseling for perpetrators and individual counseling to address his sexual abuse. Father's attorney objected to the court requiring Father to drug test and the restriction on liberalization of visitation.

Father timely appealed.[5]

---

[5]     Mother is not a party to this appeal.

# DISCUSSION

A.     *Father's Appeal of the Jurisdiction Findings Is Justiciable*

The Department contends Father's appeal is not justiciable because Mother has not appealed from the jurisdiction findings and disposition order and Father does not challenge the findings as to Mother.  Father argues his claims are justiciable because he challenges the jurisdiction findings on which the disposition order he also challenges is based.  We agree with Father his appeal is justiciable.

An appeal is not justiciable where "no effective relief could be granted . . . , as jurisdiction would be established regardless of the appellate court's conclusions with respect to any such [challenged] jurisdictional grounds."  (*In re Madison S.* (2017) 15 Cal.App.5th 308, 329; accord, *In re I.A.* (2011) 201 Cal.App.4th 1484, 1490 ["An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status."].)  Nevertheless, "[c]ourts may exercise their 'discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction" [citation].'"  (*In re D.P.* (2015) 237 Cal.App.4th 911, 917, quoting *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763; accord, *In re Madison S.,* at p. 329; *In re J.C.* (2014) 233 Cal.App.4th 1, 4.)  We exercise our discretion to reach the merits

10

of Father's challenges because the jurisdiction findings against him serve as a basis for the removal order.

B.     *Substantial Evidence Does Not Support the Jurisdiction Findings as to Father*

    1.     *Standard of review*

The juvenile court has jurisdiction over a child if the Department establishes by a preponderance of the evidence that an allegation made pursuant to section 300 is true. (§ 355, subd. (a); *In re I.J.* (2013) 56 Cal.4th 766, 773.) We review the juvenile court's jurisdiction findings for substantial evidence in light of the whole record. (*In re I.C.* (2018) 4 Cal.5th 869, 892 ["the evidence supporting the jurisdictional findings must be considered "'in the light of the *whole record*'" 'to determine whether it discloses substantial evidence'"]; *In re R.T.* (2017) 3 Cal.5th 622, 633 ["'In reviewing the jurisdictional findings and disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them.'"].) Substantial evidence is "evidence which is reasonable, credible, and of solid value." (*In re I.C.,* at p. 892; accord, *In re Cole L.* (2021) 70 Cal.App.5th 591, 602.) "'[W]e draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.'" (*In re R.T.*, at p. 633; accord, *In re I.J.*, at p. 773; *In re Cole L.*, at p. 602 ["while substantial evidence may consist of inferences, any inferences must rest on the evidence; inferences based on speculation or conjecture cannot support a finding"].) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature

11

to support the findings or orders." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206; accord, *In re D.B.* (2018) 26 Cal.App.5th 320, 328-329.)

> 2. *Substantial evidence does not support the juvenile court's jurisdiction finding under section 300, subdivision (g)*

Section 300, subdivision (g), provides for juvenile court jurisdiction when, among other grounds, "[t]he child has been left without any provision of support." (Accord, *In re Anthony G.* (2011) 194 Cal.App.4th 1060, 1065 ["As pertinent here, a jurisdictional finding under section 300, subdivision (g) requires [the Department] to show that '[t]he child has been left without any provision for support . . . .'"]; *In re J.O.* (2009) 178 Cal.App.4th 139, 153 [same], disapproved on another ground in *In re R.T., supra*, 3 Cal.5th 622.)

A jurisdiction finding under section 300, subdivision (g), does not require the Department to prove serious harm or risk of harm. (*In re J.O., supra*, 178 Cal.App.4th at p. 153.) "Whether a parent can arrange for care is to be determined as of the date of the jurisdictional hearing, and a non-custodial parent's failure to make arrangements before the child is removed by [the Department] does not cause the child to fall within the terms of section 300, subdivision (g)." (*Ibid.*; accord, *In re Aaron S.* (1991) 228 Cal.App.3d 202, 209 ["The statute requires proof that appellant was unable to arrange for care at the time of the hearing, not that he had failed to do so at some prior point in time."].)

Father contends substantial evidence does not support the juvenile court's jurisdiction finding under section 300,

subdivision (g), because Father never left the children without provision for support.  Rather, prior to the removal of the children in January 2021, Mother cared for the children under an informal agreement between Father and Mother.  The Department argues substantial evidence supports the court's jurisdiction finding because "Father had not arranged for the children's care with a relative when Mother became unable to care for them—as a result, the children were placed in foster care."  Father has the better argument.

As discussed, on November 19, 2020 Father told the social worker he was "not currently stable to have the children in his care," but he had family who could care for the children "if needed."  As of January 21, 2021, Father was still unable to care for the children, and his family was not available to care for the children.  Although the children were therefore placed in foster care on January 26, they remained there for only one day.  On January 27 the children were placed with the paternal aunt, after Mother suggested the placement, stating "there were already plans for the [paternal aunt] to pick up the children and have an extended visit with her."  And Father similarly requested at the February 2, 2021 detention hearing that if the children could not be released to Mother, they should be released to Father conditioned on placement with the paternal aunt.  Moreover, prior to the children's removal, they were in good health, had adequate food and shelter, and showed no signs of abuse or neglect.

There is not substantial evidence Father left the children without providing support within the meaning of section 300, subdivision (g).  Father's failure to arrange for the placement of the children before the Department removed the children "is not

13

sufficient in and of itself to meet the term of section 300, subdivision (g)." (*In re Aaron S., supra*, 228 Cal.App.3d at p. 209.) At the time of the jurisdiction hearing, the children were placed with the paternal aunt, consistent with Father's request at the February 2, 2021 detention hearing. (See *In re J.O., supra*, 178 Cal.App.4th at p. 153 [the Department must prove a parent cannot arrange for care of a child as of the date of the jurisdiction hearing to support allegations under § 300, subd. (g)]; *In re Aaron S.*, at p. 209 [same].) The Department's argument Father left the children without provision for support because it was Mother, not Father, who identified the paternal aunt for placement is not persuasive in light of Father's arrangement with Mother to care for the children.

    *In re E.A.* (2018) 24 Cal.App.5th 648, relied on by the Department, is distinguishable. There, the parents left the children without provision for support, abandoning them for seven months in a Tijuana shelter in the custody of Mexican Department of Integrity of Families without making any attempt to reunify. (*Id.* at pp. 656, 658.) The children were then brought to the United States (where they were citizens), and the juvenile court placed them with the maternal grandmother. At the jurisdiction hearing, the juvenile court concluded the parents had left the children without provision for support under section 300, subdivision (g), but the later placement of the children with the maternal grandmother defeated any exercise of jurisdiction, and on that basis the court dismissed the petition. (*In re E.A.*, at pp. 658-659.) The Court of Appeal reversed, concluding the juvenile court had misinterpreted section 300, subdivision (g), reasoning the "[g]randmother's willingness to provide for minors' care, a relevant fact if dependency jurisdiction was sought under

14

the last criteria [subdivision (g)], is not an exception to, and does not trump, a finding that 'the child has been left without provision for his or her support' when dependency jurisdiction is asserted under the first clause of section 300(g)." (*In re E.A.*, at p. 662.) The court reasoned further the parents had not arranged for the grandmother to care for the children, did not want the children to live with the grandmother, and demonstrated a lack of interest in the children's welfare at the time of the jurisdiction hearing by failing to meet with the social worker, to call the children when scheduled, or to submit to drug testing. (*Id.* at p. 663.)

Here, Mother and Father arranged for placement of the children with the paternal aunt after the children were removed from the parents' care. That the children spent one day in foster care prior to the jurisdiction hearing does not provide a basis for jurisdiction under section 300, subdivision (g). Thus, we reverse the juvenile court's jurisdiction finding under section 300, subdivision (g).

> 3. *The juvenile court erred in sustaining the sexual abuse allegations under section 300, subdivision (b)(1)*
> a. *Governing law*

Section 300, subdivision (b)(1), allows the juvenile court to assume jurisdiction when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise or protect the child . . . or by the willful or negligent failure of the parent to provide the child with adequate food, clothing, shelter, or medical

15

treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

"A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re Cole L., supra*, 70 Cal.App.5th 591, 601; accord, *In re L.W.* (2019) 32 Cal.App.5th 840, 848; see *In re R.T., supra*, 3 Cal.5th at p. 624 ["section 300(b)(1) authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child"].) "Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*Cole L.*, at pp. 601-602; accord, *In re L.O.* (2021) 67 Cal.App.5th 227, 238 ["'Although there must be a present risk of harm to the minor, the juvenile court may consider past events to determine whether the child is presently in need of juvenile court protection.'"].) "A parent's '"[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.'" (*Cole L.*, at p. 602; accord, *In re J.A.* (2020) 47 Cal.App.5th 1036, 1048.)

Section 355.1, subdivision (d), "provides that a parent or guardian's prior conviction of sexual abuse as defined in Penal Code section 11165.1 or the parent's legal obligation to register as a sex offender as a result of a felony conviction pursuant to Penal Code section 290 constitutes 'prima facie evidence in any

16

proceeding that the [child who is the subject of the dependency proceeding] is a person described by subdivision (a), (b), (c), or (d) of Section 300 and is at substantial risk of abuse or neglect.  The prima facie evidence constitutes a presumption affecting the burden of producing evidence.'" (*In re Quentin H.* (2014) 230 Cal.App.4th 608, 614 (*Quentin H.*); accord, *In re S.R.* (2020) 48 Cal.App.5th 204, 221.)  A presumption affecting the burden of producing evidence "require[s] the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption." (Evid. Code, § 604; accord, *Quentin H.*, at p. 614.)

Thus, the section 355.1 presumption "disappears once contrary evidence is introduced whether or not the contrary evidence is sufficient under the appropriate standard of proof to disprove the presumed fact."[6] (*Quentin H., supra*, 230 Cal.App.4th at p. 615, fn. 6; accord, *In re S.R., supra*, 48 Cal.App.5th at p. 222.)  "Once rebutted, the presumed fact may still be considered by the fact finder, as well as any reasonable inferences to be derived therefrom . . . , but

---

[6]     "A presumption affecting the burden of proof, in contrast, is designed to implement some public policy; it places on the party against whom it operates the affirmative obligation to disprove the presumed fact by a preponderance of the evidence, unless a different standard of proof is required by law." (*Quentin H., supra*, 230 Cal.App.4th at p. 615, fn. 6; see Evid. Code, § 606 [the effect of a presumption affecting the burden of proof is "to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact"].)

without regard to the benefit of the presumption." (*Quentin H.*, at pp. 614-615; accord, *In re S.R.*, at p. 222 ["Even without the benefit of the [rebutted] presumption, however, the juvenile court was entitled to consider 'the fact of [the father's] prior sex abuse conviction and any reasonable inferences to be derived from it.'"]; see Evid. Code, § 604 ["[n]othing in this section shall be construed to prevent the drawing of any inference that may be appropriate"].)

> b. *Father rebutted the presumption under section 355.1*

Father contends the juvenile court improperly relied on the section 355.1 presumption in finding under section 300, subdivision (b)(1), the children were at substantial risk of abuse or neglect even though Father rebutted the presumption with evidence in the Department's reports that the children stated they had never been sexually abused; Mother and Father coparented the children for 14 years without any signs of sexual abuse by Father; and Father had not reoffended since being released from parole in 2010. The Department argues Father did not rebut the presumption given the 20-year interval between Father's two convictions for "sexual offense[s]" against minors, the absence of evidence Father completed rehabilitative services, and Father's unwillingness to discuss the nature of the offenses. Father is correct.

Father's 1985 conviction for committing lewd or lascivious acts on a child under 14 years of age (Pen. Code, § 288, subd. (a)) constitutes "'sexual abuse'" under Penal Code section 11165.1, subdivision (a), thereby triggering the presumption under section 355.1, subdivision (d). (See Pen. Code, § 11165.1,

18

subd. (a) [defining "'sexual abuse'" to include, among other things, "conduct in violation of . . . subdivision (a) . . . of, Section 288 (lewd or lascivious acts upon a child)"].) However, the juvenile court erred in finding Father's 2005 conviction under Penal Code section 261.5, subdivision (c) (unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator) also fell within the definition of "sexual abuse" pursuant to section 355.1, subdivision (d).[7] (See Pen. Code, § 11165.1, subd. (a) [defining "'sexual abuse'" to include "conduct in violation of . . . subdivision (d) of Section 261.5," but not subdivision (c) of that section].) Further, Father's 2005 conviction, based on unlawful sexual intercourse with a minor who was three years younger than Father, does not support the juvenile court's finding the victim was under 14 years of age (and certainly does not show the victim was under three years old). At most the record of conviction shows the victim was a minor. After the children's counsel pointed out the error, the court acknowledged it had misread the conviction record, but it failed to revisit its jurisdiction finding that was based on Father's two convictions for sexual abuse, one of which the court believed involved a child younger than three years old.

Moreover, in sustaining the sexual abuse count (b-3), the juvenile court misstated the applicable evidentiary burden, explaining the Department had met its "the burden of proof" rather than the burden of producing evidence. (See § 355.1, subd.

_____

[7] It is troubling that counsel for Father and the Department on appeal similarly treat Father's 2005 conviction as one for sexual abuse under section 355.1, subdivision (d). Further, Father's counsel erroneously refers to Father's conviction as one "for having sex with a minor child under three years of age."

(d).) Father amply rebutted the presumption he posed a danger to the children by his showing the 1985 offense for sexual abuse was stale; the offense did not involve Father's children; the children denied they had ever been abused; and Father lived with the family for 14 years with no indicia of sexual abuse.

Our opinion in *Quentin H., supra*, 230 Cal.App.4th 608 is instructive. There, the father suffered a conviction of forcible oral copulation with a minor under 14 years old, which required him to register as a sex offender, over 20 years before the Department filed its petition. (*Id.* at p. 611.) At the jurisdiction hearing, the father argued he was not a risk to the children, relying on the staleness of the conviction and statements in the Department's reports by the children and their mother that the father had lived with them for a substantial amount of time and never acted inappropriately with the children. (*Id.* at p. 612.) As here, the Department argued the father posed a danger to his children based on his conviction and lack of evidence he had completed rehabilitative therapy. (*Ibid.*) We reversed the juvenile court's jurisdiction findings under section 300, subdivisions (b) and (d), reasoning Father's evidence was sufficient to meet his burden of production, and thus, the presumption disappeared. (*Quentin*, at p. 610.) We explained, "The question is not whether this evidence is sufficient to support a jurisdiction finding because the court did not weigh this evidence or make any findings as to the significance or weight of the Department's evidence relative to [father's]. Instead, it erroneously relied on the presumption to sustain the petition as to [father], mistakenly believing no contrary evidence apart from the date of the conviction had been presented to overcome the presumption of dangerousness contained in section 355.1. This was error." (*Id.* at p. 620.) We

20

remanded for the court to make findings based on the evidence without regard to the presumption. (*Id.* at pp. 615-618.)

In light of the juvenile court's factual and legal errors, as in *Quentin H.*, we reverse the court's jurisdiction finding on count b-3 based on the sexual abuse allegations.[8] On remand, the court must consider the evidence presented at the jurisdiction hearing without regard to the presumption under section 355.1, subdivision (d), in determining whether the Department carried its burden to show by a preponderance of the evidence jurisdiction is proper based on Father's prior convictions and status as a sex offender.

C.    *We Reverse the Disposition Order as to Father*

Because we reverse the jurisdiction finding as to Father, "the court's findings cannot support a disposition order denying him custody of the children." (*In re Andrew S.* (2016) 2 Cal.App.5th 536, 544; accord, *In re R.M.* (2009) 175 Cal.App.4th 986, 991.) Further, "all subsequent orders as to [Father] must be reversed as well." (*In re R.M.* (2009) 175 Cal.App.4th at p. 991.) We therefore reverse the removal order and order requiring Father to submit to drug testing.

---

[8]    As we explained in *Quentin H., supra*, 230 Cal.App.4th at page 620, footnote 8, the court's misapplication of the presumption under section 355.1 was prejudicial: "Under California law a judgment may not be reversed based on improper rejection of evidence unless the error is prejudicial— that is, it resulted in a miscarriage of justice. [Citations.] Here, in a close case in which the court's improper application of the presumption plainly tilted the balance in favor of the Department, we simply cannot deem the error harmless."

21

On remand, the juvenile court will need to base any disposition order on current circumstances, including any requirement as to drug testing (challenged by Father on appeal). Substantial evidence did not support the requirement in the prior disposition order that Father submit to drug testing based on his single statement reflected in the December 23, 2020 detention report that he "said he had a drinking problem, too." Father made this statement in explaining why he distanced himself from Mother and the children in 2017—because of Mother's drinking problem. There is no evidence in the record that Father had a "drinking problem" after 2017, or the nature of any drinking problem. "The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." (§ 362, subd. (d); see *In re Daniel B.* (2014) 231 Cal.App.4th 663, 673 ["The case plan ordered by the court should be appropriate for each individual family based on facts relevant to that family, and should be designed to eliminate the conditions that led to the dependency in the first instance."].) Absent evidence Father had an alcohol or drug abuse problem in 2020 that led to the court's jurisdiction over the children (and was an ongoing issue), the juvenile court abused its discretion in requiring Father to submit to drug testing. (See *In re Drake M.* (2012) 211 Cal.App.4th 754, 770 [juvenile court abused its discretion in ordering drug testing of father where there was nothing in the record to indicate father had a substance abuse problem or that his use of medical marijuana led to the finding of dependency jurisdiction, nor was the condition designed to address mother's substance abuse and mental illness issues].)

## DISPOSITION

The jurisdiction findings on counts b-3 and g-1 and the disposition order are reversed as to Father. On remand the juvenile court shall conduct a new jurisdiction hearing as to Father to determine whether the Department has sustained its burden of proof as to the sexual abuse allegations in count b-3 of the first amended petition without regard to the section 355.1 presumption, giving appropriate weight to the family's current situation.

FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.